## In re BASS et al.

## In re TRIANGLE CLOAK & SUIT CO.

(District Court, E. D. Pennsylvania. April 10, 1919.)

No. 5267.

1. BANKRUPTCY ⬨136(2)—SHORTAGE OF ASSETS—BURDEN TO EXPLAIN.

Where the books of a bankrupt firm showed a credit balance of over $29,000, the burden of proof shifted to the bankrupts to present some evidence beyond the vague statements of one of the firm as to how such an amount dwindled to the $50 worth of merchandise which came into the hands of the receiver.

2. BANKRUPTCY ⬨228—FINDINGS OF REFEREE—REVIEW.

Where the referee has considered carefully the evidence on the issue of whether the bankrupts are concealing assets, his findings should not be disturbed, in the absence of a demonstration that a plain mistake has been made.

3. BANKRUPTCY ⬨136(2)—CONCEALMENT OF ASSETS—SUFFICIENCY OF EVIDENCE.

Evidence *held* to sustain the findings of a referee in bankruptcy that the bankrupts were fraudulently concealing and withholding some $17,-000 of assets; he having allowed a reduction of $12,000 from the value of goods on hand, as shown by the firm's books at a prior date.

In Bankruptcy. In the matter of Isaac B. Bass, Herman M. Bass, and Louis Abramowitz, individually and trading as the Triangle Cloak & Suit Company, bankrupts. On certificate of review. Petition for review dismissed, and order of referee affirmed.

Harry S. Mesirov, of Philadelphia, Pa., for trustee.
William M. Lewis, of Philadelphia, Pa., for bankrupts.

THOMPSON, District Judge. A petition in bankruptcy was filed against the present petitioners on October 17, 1914, and on November 23, 1914, they were adjudged bankrupts.

The record shows that the merchandise which came into the hands of the receiver did not exceed in value $50. The receiver was elected trustee, and, as a result of an examination of the books of the bankrupts, presented a petition to the referee for an order upon the bankrupts to turn over to him the sum of $32,107.87, alleging that they were fraudulently concealing and withholding the same from him. The referee examined Herman Bass, one of the partners, and an accountant who had made an examination of the firm's books. From the evidence derived from the books, the accountant found that, on January 1, 1914, only nine months before the petition was filed, the firm had on hand merchandise valued at $20,267.37. Adding to that the cost, as shown by the books, of merchandise purchased from January 1 until October 1, 1914, and the amounts expended for labor upon the goods purchased in making it up into salable merchandise, and giving credit for the sales, less goods returned, and less 10 per cent. for overhead expenses, 10 per cent. for discounts and commissions, and 10 per cent. for profits, the accountant showed there was unaccounted for upon the firm's own books a balance of $29,442.79.

The accountant, in making the 30 per cent. charge for the items above referred to, based his calculations upon experience in the cloak and suit trade for 20 years, as well as his experience as an accountant. The bankrupts attacked the item of $20,267.37; Herman Bass testifying that in his opinion the value of merchandise on hand on January 1, 1914, did not exceed $8,000. The referee accepted this testimony on behalf of the bankrupts as an admission upon their part that they had merchandise of the value of $8,000 on hand at that date, and found, making a liberal allowance in their favor, that at the time of the filing of the petition in bankruptcy they had in their possession or under their control the sum of $17,000 belonging to the estate in bankruptcy. No explanation of the disposition of the money since the filing of the petition having been made, he found that it was still in their possession or under their control, and entered an order that it be paid over to the trustee.

[1-3] I fail to discover any error in the findings of fact of the learned referee. He resolved the doubt in favor of the bankrupts in allowing a reduction of over $12,000 in the value of the merchandise which their books showed was on hand on January 1, 1914. He allowed every other item actually proved in favor of the bankrupts. Surely the books upon which a merchant relies in the case of original entries to prove his account against his debtor, and which show upon their face that they are kept in a regular way, present the strongest kind of evidence against the party for whose benefit the accounts are kept. The burden of proof was shifted to the bankrupts to present some evidence beyond the vague statements of one of the firm to explain how an apparent balance on their books of over $29,000 dwindled to the paltry $50 worth of merchandise which came into the hands of the receiver. If there was any error in the case, it was in favor of the bankrupts in accepting as credible their contention that the books were in error in showing the value of merchandise on hand on January 1, 1914. The referee has considered the evidence carefully, and his findings ought not to be disturbed, in the absence of a demonstration that a plain mistake has been made. Epstein v. Steinfeld, 32 Am. Bankr. Rep. 6, 210 Fed. 236, 127 C. C. A. 54.

The petition for review is dismissed, and the order of the referee affirmed.